UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LEROY SCOTT, JR.,

    Petitioner,

v.                                           Civil No. 2:16cv5
                                                Criminal No. 2:13cr20

UNITED STATES OF AMERICA,

    Respondent.

## OPINION AND ORDER

This matter is before the Court on a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed by Leroy Scott, Jr. ("Petitioner"). ECF No. 79. Petitioner's § 2255 motion contains five claims, including various challenges to the adequacy of defense counsel's representation. Id. The Government filed a brief in opposition to Petitioner's motion, ECF No. 86, and Petitioner has filed: (1) a reply brief in support of his first four claims, ECF No. 88; and (2) a motion seeking "To Strike Ground Five" from his § 2255 motion, ECF No. 87. This Court previously **GRANTED** Petitioner's motion addressing Ground Five, thereby deeming Ground Five "withdrawn." ECF No. 94. In light of factual conflicts in the record relevant to Petitioner's remaining four claims, the Court appointed new counsel to represent Petitioner and scheduled an evidentiary hearing. Id. Such hearing

was conducted on November 20, 2017, and both Petitioner and his original defense counsel (hereinafter "trial counsel") testified at such hearing. Petitioner's § 2255 motion is now ripe for resolution.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In early 2013, a grand jury returned a five-count indictment charging Petitioner with conspiracy counts and substantive counts associated with a retaliatory killing of a witness/informant and additional attempted retaliatory killings of other suspected witnesses. ECF No. 3. At the time he was indicted in this case, Petitioner had served approximately one-third of a 30-year prison term imposed in a previous federal case stemming from a drug trafficking conspiracy. Case No. 2:03cr52. While incarcerated on these earlier drug and firearm charges, Petitioner was interviewed by two investigators at the federal prison facility where he was housed. After being read his Miranda rights, Petitioner knowingly signed a Miranda waiver form, and provided a detailed confession outlining his involvement, many years ago, in the homicide and attempted homicides at issue in this case. ECF No. 44, at 81-84.

Initially, the death penalty was an available punishment for all five indicted offenses in this case. However, approximately four months after the indictment was returned, the Government indicated at a status conference, held in open court, that it would not be seeking the death penalty. ECF Nos. 14, 78. Petitioner was present at such hearing with his trial counsel. Id.

Approximately three weeks after the Government announced its intention not to seek the death penalty, Petitioner, with the assistance of trial counsel, filed a motion seeking to suppress his confession, asserting: (1) that he asked investigators for a lawyer prior to confessing; and (2) that his confession was otherwise involuntary. ECF No. 17, at 3-4. This Court conducted an evidentiary hearing on the suppression motion, and at the conclusion of such hearing, the Court denied the suppression motion, expressly finding that Petitioner's testimony regarding the details of his confession was not credible. ECF No. 44, at 94-97.

Petitioner subsequently entered into a written plea agreement with the Government, formally admitting his guilt to all five charges. ECF No. 40. Such written agreement provides for a binding stipulated sentence of "life" as to each of the five counts, to include the "Use of a Firearm resulting in Death" charged in Count Five—an offense for which the punishment must be imposed to run consecutively to the punishment on the other counts. Id. ¶ 4. Although the Government had previously indicated its intention not to seek the death penalty, the language of the plea agreement states that the Government agrees not to seek the death penalty "[i]n return for the defendant's pleas of guilty and the defendant's agreement to a sentence of life imprisonment" on all five counts. Id. ¶ 1.

As outlined in a motion filed by trial counsel shortly before the guilty plea hearing, ECF No. 38, and as discussed at both the

guilty plea hearing, ECF No. 54, and at the recently conducted § 2255 evidentiary hearing, the Government initially offered Petitioner the opportunity to cooperate in the hope of obtaining a sentence reduction. Trial counsel discussed such offer with Petitioner on multiple occasions, and although Petitioner was initially undecided regarding both the plea offer and cooperation, he eventually requested that a proffer session be scheduled. ECF No. 38 ¶¶ 6-7.[1] Petitioner appeared for the proffer session, with his counsel, but such session was canceled when Petitioner decided not to cooperate. ECF No. 38 ¶¶ 7-8. Petitioner did ultimately elect to plead guilty to the written plea agreement proposed by the Government, but he did so only after the cooperation language was removed. ECF No. 54, at 10. While the record created at the time of Petitioner's plea establishes that the original plea offer did not include any reservation of appellate rights, the written plea agreement that was ultimately signed by Petitioner includes a partial reservation of appeal rights that allowed Petitioner to challenge this Court's denial of Petitioner's suppression motion. Id.; ECF No. 40 ¶ 5.

Consistent with the terms of the plea agreement, Petitioner was subsequently sentenced to a concurrent term of life imprisonment on Counts One through Four, and a consecutive term of life imprisonment on Count Five. ECF No. 59. Petitioner filed a timely appeal to the

---

[1] Petitioner's trial counsel provided credible testimony at the recent § 2255 evidentiary hearing confirming the factual assertions made in ECF No. 38, a document filed contemporaneously to the plea negotiations.

4

United States Court of Appeals for the Fourth Circuit challenging this Court's denial of the motion to suppress, and the Fourth Circuit affirmed this Court's suppression ruling. United States v. Scott, 578 F. App'x 199, 200 (4th Cir. 2014). Petitioner subsequently filed the pending § 2255 motion which is ripe for resolution.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must prove by a preponderance of the evidence that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." Id.; see Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that enables a petitioner to collaterally attack his sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal.[2] United States v. Hadden, 475 F.3d 652, 663 (4th Cir. 2007). With limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear

---

[2] The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999).

5

a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). The "higher hurdle" applies because, once a Petitioner's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." Id. at 164-65. Accordingly, the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless a petitioner can show: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which he complains." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999).

A § 2255 petitioner need not, however, overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both: (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) that counsel's inadequate performance caused the petitioner prejudice. Strickland

v. Washington, 466 U.S. 668, 687-88 (1984). Satisfying the first prong of Strickland requires a petitioner to establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The prejudice prong of the Strickland test is slightly modified when a petitioner challenges trial counsel's handling of plea negotiations. In such circumstances, petitioners must typically "demonstrate a reasonable probability that (1) 'they would have accepted the earlier plea offer had they been afforded effective assistance of counsel,' and (2) 'the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it . . . .'" Merzbacher v. Shearin, 706 F.3d 356, 366 (4th Cir. 2013) (quoting Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012)); see Lafler v. Cooper, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

### III. DISCUSSION

#### A. Involuntary Plea

Petitioner's first ground for relief asserts that Petitioner's guilty plea was involuntary because Petitioner was misinformed regarding whether the Government would pursue the death penalty. The facts advanced by Petitioner in support of such ground for relief indicate that Petitioner faults the Government for providing misinformation on this issue. Specifically, Petitioner asserts that the wording of the plea agreement, which was drafted by the Government, misled Petitioner into believing that the only way he could avoid the death penalty was to plead guilty. Petitioner further claims that, "but for" being misled, Petitioner would not have pled guilty.

First, to the extent Petitioner asserts misconduct on behalf of the Government based on language in the plea agreement that conflicted with the Government's earlier in-court statement indicating that the death penalty would <u>not</u> be pursued, such claim is procedurally defaulted as it is raised for the first time in Petitioner's § 2255 motion. See <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998) (finding that the petitioner's claim that his plea "was not intelligent because the information provided him by the District Court at his plea colloquy was erroneous" was procedurally defaulted as it could have been raised and fully addressed on direct appeal). Because Petitioner fails to demonstrate "cause" and

8

"actual prejudice" to excuse his default, this claim is **DISMISSED**. Mikalajunas, 186 F.3d at 492-93.

Second, and alternatively, the Court finds that, to the extent Petitioner's claim is not defaulted, such claim fails on the merits. Based on credibility determinations made at the evidentiary hearing, Petitioner was fully aware at the time of his plea that the Government was not pursuing the death penalty, and such knowledge was based both on the Government's earlier in-court statement and defense counsel's consistent and accurate advice.[3] As the Court noted at the conclusion of the evidentiary hearing, Petitioner's contention that his lawyer stated, or even threatened, that Petitioner's life would be spared only if he accepted the plea agreement, strains credulity and is patently unbelievable. Because Petitioner fails to demonstrate that either the Government or his lawyer misled Petitioner into believing that he needed to enter a plea in order to avoid the death penalty, Petitioner fails to demonstrate that his plea was involuntary, and his first ground for relief is **DENIED**.

### B. Ineffective Assistance - Plea Negotiations

Petitioner's second ground for relief, which is related to his first, asserts that Petitioner's trial counsel was ineffective during plea negotiations as counsel "urged" Petitioner to sign the

---

[3] At the plea hearing, the Court stated that because the Government was not seeking the death penalty, the maximum punishment for each Count was "life." Such statement was not made in order to document a "quid pro quo," but rather, was made to satisfy the Court's obligation to explain the maximum punishment under the law.

9

plea agreement based on the knowingly false assertion that, but for entry of a plea of guilty, Petitioner would be sentenced to death. While such ineffective assistance claim is properly advanced for the first time in a § 2255 motion, Petitioner plainly fails to satisfy the first prong of Strickland in light of this Court's factual findings at the evidentiary hearing. Notably, as indicated above, the Court found Petitioner's factual allegations regarding counsel's behavior/advice to be patently unbelievable.[4] Moreover, the Court found that defense counsel did not perform deficiently by failing to challenge the Government's unartful inclusion of "quid quo pro" language in the written plea agreement, because even though all counsel, and Petitioner, were fully aware that the Government had already elected not to pursue the death penalty at the time of the plea negotiations, the language in the plea agreement stating that

---

[4] Having conducted an evidentiary hearing to ensure that Petitioner was afforded a full opportunity to develop facts relevant to his ineffective assistance claims, the Court has no doubt that, at the time of his plea, Petitioner fully understood that he was no longer facing the death penalty. While it remains unclear precisely why Petitioner decided to accept the terms of the plea offer after he elected not to cooperate (thereby eliminating the greatest benefit secured by his counsel through plea negotiations) the lack of clarity on such point does not undermine the Court's confidence in its findings. Notably: (1) in light of his detailed confession to authorities, it appears that overturning this Court's suppression ruling was Petitioner's only hope for a favorable outcome (other than cooperating) and Petitioner's plea agreement preserved the right to appeal this issue; (2) at the time Petitioner chose to plead guilty, he was approximately 50 years old and still had nearly 20 years to serve on his prior federal convictions—moreover, regardless of the sentence that Petitioner received on the firearm count charged in Count Five, he had confessed his guilt to multiple counts that carried a mandatory "life" sentence; and (3) Petitioner may have elected to plead guilty because of remorse and/or because of a changed spiritual viewpoint, see ECF No. 43, at 68 (Petitioner's testimony recounting the fact that, when he confessed, he told agents that he was a changed man and had given his life to God).

the Government was not pursuing the death penalty in light of the parties' agreement was not harmful to Petitioner's interests. To the contrary, such language was arguably beneficial as it bound the Government not to revisit whether the death penalty should be pursued in this case.

In light of the facts found by the Court, the Court separately finds that Petitioner fails to demonstrate Strickland prejudice, finding that, based on the recently developed evidentiary record, Petitioner suffered no prejudice due to counsel's performance. Rather, in light of Petitioner's detailed confession, it appears that Petitioner's fate was essentially sealed when his motion to suppress was denied. At that point, it appears that Petitioner's only hope for a favorable outcome was cooperating with the Government, or succeeding on an appeal of this Court's suppression ruling. Defense counsel succeeded in providing Petitioner an opportunity to cooperate, which might have resulted in a sentence of less than life, but Petitioner himself elected to withdraw from the proffer session at the last moment. Notwithstanding Petitioner's election not to cooperate, the plea agreement ultimately secured by trial counsel still preserved the other potential avenue for relief as it expressly allowed Petitioner the right to challenge this Court's suppression

ruling.[5] In light of Petitioner's failure to satisfy either prong of Strickland, his second ground for relief is **DENIED**.

### C. Ineffective Assistance - Conflict

Petitioner's third ground for relief asserts that trial counsel provided ineffective assistance because his decisions were motivated by a conflict of interest. While a claim of ineffective assistance is typically governed by the standard outlined in Strickland, when an "ineffective assistance claim is premised on the existence of an actual conflict of interest," the claim is "assessed under the standard outlined in Cuyler v. Sullivan, 446 U.S. 335 (1980) . . . [which] requires a showing that (1) petitioner's lawyer operated under a 'conflict of interest' and (2) such conflict 'adversely affected his lawyer's performance.'" United States v. Nicholson, 611 F.3d 191, 205 (4th Cir. 2010) (quoting Sullivan, 446 U.S. at 348).

As discussed on the record at the evidentiary hearing, it is undisputed that one of trial counsel's former clients was a co-conspirator of Petitioner in the federal drug case for which Petitioner was previously convicted and sentenced. The retaliatory killings charged in the instant action are related to the

---

[5] While Petitioner testified at the § 2255 evidentiary hearing that he wanted to plead guilty through an "open plea" without waiving any rights: (1) such testimony was offered in hindsight, after he lost his appeal; and (2) an "open plea" to all charges does not appear to have been an objectively reasonable option as it would have forfeited Petitioner's right to challenge this Court's suppression ruling. See United States v. Gross, 283 F. App'x 997, 997 (4th Cir. 2008) (explaining that because the defendant "entered an unconditional guilty plea to his offenses, he cannot [thereafter] attack the district court's pre-trial decision denying his motion to suppress the evidence").

12

earlier-in-time drug case as the victims were thought to be cooperating with the Government in the drug investigation. Petitioner therefore endeavored to establish through his § 2255 motion that a conflict existed because the cases are related and his lawyer's former client "could have" testified for the Government, or alternatively, "could have" testified on Petitioner's behalf, if the instant case went to trial.

As stated on the record at the § 2255 hearing, given a chance to expand the evidentiary record on this issue, Petitioner offered nothing more than vague and conclusory assertions regarding this potential witness's purported relevance to this case, and his assertion of a conflict of interest was speculative and uncompelling. Moreover, the Court finds that trial counsel provided credible testimony at the evidentiary hearing establishing that: (1) trial counsel spoke with Petitioner about this potential conflict at the outset of his representation and Petitioner expressed no concerns about counsel's continued representation; (2) trial counsel spoke with counsel for the Government to confirm that his former client would not be a witness for the Government and did not otherwise pose an actual conflict in this case; and (3) at the time trial counsel was appointed in this case, his former client had served her sentence and was no longer in a "Rule 35 posture" that could create a conflict between the former client and Petitioner. Petitioner therefore fails to demonstrate that a conflict existed and/or that his counsel

performed deficiently in handling any <u>potential</u> conflict of interest.

Separately, the Court finds that even if a conflict is assumed, Petitioner plainly fails to demonstrate that such conflict adversely affected trial counsel's performance. As discussed above, defense counsel performed well within constitutional bounds when representing Petitioner in this case in the face of Petitioner's earlier-in-time detailed confession. Counsel secured a cooperation agreement that Petitioner elected not to follow through on, and then secured the right to challenge this Court's suppression ruling. While counsel conceivably could have obtained a better result on the consecutive sentence on Count Five, it is speculation to assert that the Government would have agreed to a lesser sentence on this Count in light of the <u>multiple</u> attempted killings at issue in this case. Moreover, even assuming that a better result on Count Five was possible, there is no evidence, direct or circumstantial, suggesting that trial counsel's advice regarding the Government's plea offer was influenced in any way by his decade old representation of a co-conspirator with nothing to gain from the resolution of this case.

In sum, Petitioner fails to demonstrate that his lawyer was operating under a conflict of interest, and/or that there was an adverse impact from the claimed conflict. Ground Three is therefore **DENIED**.

### D. Involuntary Plea - Denial of Right to Two Attorneys

Petitioner's fourth, and final, ground for relief asserts that his plea was involuntary because his second attorney was not present at his guilty plea hearing. Such second attorney was appointed because this case involved charges where "death" was a possible punishment, and contrary to several other circuits, a criminal defendant in our circuit continues to have the right to be represented by two attorneys <u>after</u> the Government elects not to pursue the death penalty. United States v. Boone, 245 F.3d 352, 360-61 (4th Cir. 2001). In his facts in support of Ground Four, Petitioner asserts that the presence of his second attorney at the plea hearing was critical because: (1) his other attorney was operating under a conflict of interest; and (2) it is "likely" that his second attorney would have advised Petitioner that he did not face the death penalty if he rejected the plea agreement.

First, as with Petitioner's initial ground for relief, this claim is procedurally defaulted because Petitioner raises it for the first time in his § 2255 motion. Bousley, 523 U.S. at 622.[6] As Petitioner fails to demonstrate "cause" and "actual prejudice" to excuse his default, this claim is **DISMISSED**. Mikalajunas, 186 F.3d at 492-93.

---

[6] The plea hearing transcript reveals that Petitioner's second attorney was not at the plea hearing due to a scheduling conflict, and his non-appearance was a known fact subject to litigation on direct appeal. ECF No. 54, at 12.

15

Second, even if the Court is permitted to reach the merits of such claim due to an exception to the procedural default bar, and/or if such claim is subject to interpretation as asserting an ineffective assistance claim against Petitioner's second lawyer, such claim fails on the merits. As discussed above, not only was Petitioner's primary counsel not operating under a conflict of interest, but Petitioner's primary counsel never misled Petitioner into believing that a plea of guilty was necessary to avoid the death penalty. Moreover, Petitioner fails to: (1) cite to any case law establishing that both of his attorneys need to be present in open Court at all times; (2) establish that his second attorney's non-appearance at the plea hearing was the equivalent to the constructive denial of the right to counsel; and/or (3) credibly demonstrate any prejudice resulting from the non-appearance of his second attorney at the plea hearing. Accordingly, Petitioner's fourth ground for relief is alternatively **DENIED** on the merits.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's § 2255 motion is **DISMISSED** and **DENIED**. ECF No. 79. Finding that the procedural basis for dismissal of Petitioner's § 2255 motion is not debatable, and alternatively finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is **DENIED**. 28 U.S.C. § 2253(c)(2); see R. Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a);

Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must do so **within sixty (60) days** from the date of this Order. Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner's habeas counsel and to the United States Attorney's Office in Norfolk, Virginia.

**IT IS SO ORDERED.**

/s/ _MSD_
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December 21, 2017